## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHAWN HIGGINS #350955** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-2330** |
| **BURL CAIN, WARDEN** | **SECTION "I" (3)** |

### RESPONSE TO HABEAS PETITION

Petitioner is a state court prisoner incarcerated in Louisiana State Penitentiary, Angola, Louisiana, after being convicted of second degree murder in case number 98-7021 of the docket of the 24th Judicial District Court, Jefferson Parish, Louisiana. Petitioner was sentenced in case number 98-7021 to serve life imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. Petitioner is in custody for purposes of 28 U.S.C. 2254.

### RECORD

Undersigned counsel is submitting contemporaneously with this brief a twelve volume record as follows: volumes one through three contain the state district court record in case number 98-7021 of the docket of the 24th Judicial District Court, Parish of Jefferson; volumes four through ten contain the appellate record in this matter; and volumes eleven and twelve contains the writ applications filed in the Louisiana Supreme Court in this matter under docket numbers 01-KO-3267 and 08-KP-0052. The State submits that the record is sufficient for this Court's review, and that no evidentiary hearing is required.

## STATEMENT OF THE CASE

On December 17, 1998, the Grand Jurors of the Parish of Jefferson returned a bill of indictment charging Shawn Higgins with the October 25, 1998 first degree murder of Carl Jackson, in violation of LSA-R.S. 14:30.[1]  On January 6, 1999, Higgins pleaded not guilty.  Higgins filed various pre-trial motions, including a motion to suppress an identification.  After a hearing held August 20, 1999, the motion to suppress was denied.  On February 7, 2000, the State amended the bill of indictment to allege that Higgins committed second degree murder of Carl Jackson, in violation of LSA-R.S. 14:30.1. After a trial held February 22-26, 2000, a unanimous jury found Higgins guilty of second degree murder.  On March 3, 2000, the trial judge sentenced Higgins to life imprisonment without benefit of parole, probation or suspension of sentence, with credit for time served. [2]  Higgins' counsel made an oral motion for appeal.

Higgins appealed his conviction to the Louisiana Fifth Circuit Court of Appeal, which affirmed the conviction on October 17, 2001.  *State v. Higgins*, 01-368 (La. App. 5 Cir. 10/17/01), 800 So.2d 918.  The Louisiana Supreme Court denied Higgins' application for supervisory review filed under Supreme Court docket number 01-KO-3267.  *State v. Higgins*, 01-3267 (La. 11/1/02), 828 So.2d 565.  The United States Supreme Court denied his petition for writ of certiorari on May 19, 2003.  *Higgins v. Louisiana,*  538 U.S. 1038, 123 S.Ct. 2082, 155 L.Ed.2d 1070 (2003).

On May 12, 2004, Higgins filed an *Application for Post Conviction Relief* and *Unopposed Motion to Hold Post-Conviction Relief Application in Abeyance Until Post-Conviction Counsel is*

---

[1]  On February 7, 2000, the indictment was amended to charge second degree murder, a violation of LSA-R.S. 14:30.1.

[2]  The original commitment form was amended because it reflected the original charge of first degree murder rather than the amended charge of second degree murder.

2

*Appointed for Related Capital First Degree Murder Conviction.*[3]  In his application for post conviction relief,  petitioner presented claims as follows: 1) allegations of newly discovered evidence; 2) allegations that he received ineffective assistance of counsel; 3) allegations that the State violated its discovery obligations; and 4) other listed claims.[4]  The state district court granted the petitioner's unopposed *Motion to Hold the Case in Abeyance* on May 20, 2004, and further ordered that the application for post conviction relief be supplemented and/or amended within six (6) months after the capital conviction and sentence became final in case  number 00-4999 "E."[5]

Subsequently, on March 24, 2006, attorney William Sothern filed a motion entitled *Unopposed Motion to Enroll and File Supplemental Materials* in the instant matter.[6]  Mr. Sothern sought to enroll as post conviction counsel for the petitioner and requested six (6) additional months in which to research and investigate the case and file a supplemental petition, noting that: petitioner was no longer entitled to capital post conviction counsel through the Louisiana Indigent Defense and

---

[3]  R. Vol. 1.

[4]  *See,* R., Vol. 1, *Application for Post Conviction Relief.*  The other claims which were listed but neither briefed nor explained are as follows: a) Mr. Higgins was convicted based upon an improper show up identification under the Fourth, Fifth, Sixth, and Fourteenth Amendments; b) Mr. Higgins was convicted by a jury pool from which blacks, felons, women, and other groups such as ministers, the elderly, and army personnel were improperly exempted in violation of the Fourth, Fifth, Sixth and Fourteenth Amendments; c) Extra judicial contacts tainted the jury deliberations; d) the State failed to establish venue; e) the foreperson of the grand jury was selected in violation of *Campbell v. Louisiana*; f) instructional error, including a *Cage* violation and an articulation requirement invalidated the verdict; g) Petitioner's trial and sentencing present additional meritorious constitutional violations of the First, Fourth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution including, but not limited to juror misconduct, prosecutorial misconduct, and judicial misconduct. *See*, R., Vol. 1, *Application for Post Conviction Relief* at pp. 6.

[5]  R., Vol. 1, *Order of 5/20/2004*.

[6]  R., Vol. 1.

3

Assistance Board or the Capital Post-Conviction Project of Louisiana in case number 00-4999,[7] and

that by the terms of the state district court's order of May 20, 2004, petitioner's post conviction *pro

se* post conviction in the instant case must be supplemented by April 3, 2006.  On April 4, 2006, the

state district court granted counsel's motion to enroll and allowed counsel an additional six months

in which to supplement the previously filed application for post conviction relief.

 The supplement to the petitioner's post conviction application was filed on October 4, 2006.

In the supplemental application, the petitioner presented several claims for relief: 1) allegations of

newly discovered evidence;[8] 2) allegation that the State failed to comply with its discovery

obligations; 3) alleged ineffective assistance of trial counsel;[9] 5) alleged ineffective assistance of

appellate counsel;  6) alleged misconduct by the jurors; 7) allegation that the petitioner was

---

 [7] On April 1, 2005, the Louisiana Supreme Court set aside the petitioner's conviction for first degree murder and death sentence in case number 00-4999 "E," modifying the jury's verdict and rendering a judgement of guilty of second degree murder, and  remanding the case for imposition of a life sentence. The United States Supreme Court denied Higgins' petition for certiorari on October 3, 2005. *Higgins v. Louisiana,* 546.U.S. 883, 126 S.Ct. 182, 163 L.Ed. 187 (2005).

 [8] First, petitioner alleged that the validity of his conviction was undermined by newly discovered evidence revealing that state witness Melvin Jenkins had recanted his trial testimony in a notarized statement dated October 1, 2002. Petitioner also contended that the state's use of peremptory challenges in the instant case should be reconsidered in light of the following reports, which he characterized as newly discovered evidence: Bourke R. And Hingston J., *Blackstrikes: A study of the racially disparate use of peremptory challenges by the Jefferson Parish District Attorney's Office* (September 2003), and Devine, J. *Jefferson Parish Prosecutorial Peremptory Challenge Probabilities,* (September 23, 2003). *See*, R., Vol. 2, *Supplement to Application for Post-Conviction Relief* at pp. 5-8.

 [9] Petitioner contended that retained trial counsel was unprepared and failed to conduct a reasonable investigation.  He also contended that trial counsel lacked funding necessary to hire an investigator, crime scene expert, or mental health expert and did not seek state funds to do so. Petitioner also listed numerous other alleged instances of ineffective assistance of trial counsel. *See*, R. Vol. 2, pp. 11-14.

prevented from testifying due to a prior, unconstitutionally obtained conviction; 8) alleged discrimination in the selection of the grand jury foreperson, alternatively alleged ineffective assistance of trial and appellate counsel for failing to litigate and preserve this issue. [10]

Thereafter, the *State's Response to Defendant's Post Conviction Application* was filed on January 17, 2007.[11] Petitioner filed a *Reply to the State's Response to Defendant's Post Conviction Application* on March 8, 2007.[12]

On September 12, 2007, the state district court issued a written order granting the petitioner an evidentiary hearing on his allegation that newly discovered evidence revealed that prosecution witness Melvin Jackson had recounted his trial testimony, but otherwise denying the defendant's post conviction application as supplemented.[13]

Thereafter, on September 20, 2007, the petitioner filed a *Motion to Complete Post Conviction Record with Voir Dire Transcript and for Leave to File an Amended and Supplemental Post Conviction Application.*[14] The state district court denied this motion on September 24, 2007.[15] In denying petitioner's motion, the state district court noted that petitioner's claims pertaining to an alleged *Batson* violation, were no longer before the court, having been denied on September 12, 2007.

---

[10] *See,* R. Vol. 2, *Supplement to Application for Post Conviction Relief.*

[11] R., Vol. 2.

[12] R., Vol. 3.

[13] R., Vol. 3, *Order of 9/12/07.*

[14] R., Vol. 3.

[15] R., Vol. 3, *Order of 9/24/07.*

On October 12, 2007, the petitioner filed an application for supervisory writs in the Louisiana Fifth Circuit Court of Appeal under docket number 07-KH-811.  In writ application number 07-K-811, the petitioner sought review of the state district court's September 12, 2007, decision denying all of his post conviction claims with the exception of his allegation that newly discovered evidence revealed that Melvin Jenkins had recanted his trial testimony.  The Louisiana Fifth Circuit Court of Appeal denied petitioner's writ application on December 7, 2007, noting:

> In denying the claims, the trial court found that the claims were procedurally barred because he did not raise them on direct appeal or the defendant failed to meet his burden of proving that he was entitled to the relief sought. . . . We find no error in these determinations by the trial court, and deny relator's application for writ of review.

*Higgins v. Cain*, 07-KH-811 (La. App. 5 Cir. 12/7/07)(unpublished writ decision).  Petitioner timely sought review of the Louisiana Fifth Circuit's denial of his writ application number 07-KH-811 by filing an application for supervisory writs in the Louisiana Supreme Court under docket number 08-KP-52 on January 7, 2008.[16]  The Louisiana Supreme Court denied his application for supervisory writs on January 30, 2009.  *State ex rel Higgins v. Cain*, 08-KP-52 (La. 1/30/09) 999 So.2d 741.

In the meantime, on November 15, 2007 and December 13, 2007, the state district court conducted evidentiary hearings concerning petitioner's remaining post conviction allegation that newly discovered evidence revealed that Melvin Jenkins had recanted his trial testimony.[17]  At the conclusion of the proceedings held December 13, 2007, the state district court denied petitioner's remaining post conviction claim.[18]  Petitioner sought review of the state district court's decision by

---

[16]  R., Vols. 11-12.

[17]  R., Vol. 3, Minutes of 11/15/07 and 12/13/07.

[18]  *Id.*

6

filing an application for supervisory writs in the Louisiana Fifth Circuit Court of Appeal on December 27, 2007, under docket number 07-KH-1040. On February 25, 2008, the Louisiana Fifth Circuit Court of Appeal denied petitioner's application for supervisory writs stating, "Relator has failed to meet his burden of proving error in the trial court's ruling denying his application(s) for post conviction relief. Accordingly, this application is denied." *Higgins v. Cain*, 07-KH-1040 (La. App. 5 Cir. 2/25/08).[19]

Petitioner filed his instant petition for federal habeas relief on February 4, 2009, presenting the following claims for review: 1) systemic discrimination in the selection of Jefferson Parish juries deprived him of his rights to an impartial jury and to due process of law; 2) he received ineffective assistance of appellate counsel; 3) allegation that appellate counsel's performance constituted error under *United States v. Cronic*, 466 U.S. 648 (1984); 4) he received ineffective assistance of trial counsel; and 5) his rights to counsel, confrontation and the presumption of innocence were violated when the jury prematurely deliberated upon the credibility of a witness.

Of significance, petitioner's petition appears to be timely filed. Petitioner's fourth and fifth claims are exhausted, as the substance of those claims was fairly presented to the Louisiana Supreme Court in writ application number 08-KP-52. However, respondent submits that petitioner's first, second, and third claims are unexhausted and/or otherwise subject to procedural default, for the reasons discussed *infra*. Respondent submits that petitioner's petition is therefore a mixed petition, presenting both exhausted and unexhausted claims, and subject to dismissal without prejudice. Respondent additionally submits that petitioner's fourth claim is procedurally defaulted for the reasons discussed herein.

---

[19] R., Vol. 3.

7

The respondent does not expressly waive any procedural objections and would respectfully reserve the right to submit additional documentation, procedural objections, and/or arguments on the merits in the event that this Court determines that petitioner's claims are exhausted.

## STATEMENT OF THE FACTS[20]

At approximately 10:30 p.m. on October 25, 1998, Carl Jackson was shot and killed in the stairwell of an apartment complex in the Golden Heights subdivision in Marrero. According to the physician who performed the autopsy, Jackson sustained fourteen gunshot wounds, at least three of which were fatal.

At the hearing on the motion to suppress, Ben Rocque, Carl Jackson's cousin, testified that he and Jackson visited a friend, Shawn Boudreaux, on the evening of the shooting. After the visit Rocque and Jackson descended the stairs from Boudreaux's apartment. When Jackson reached the bottom of the stairs, Rocque saw a man he later identified as Higgins jump out behind Jackson and point a gun at Jackson. After Rocque yelled a warning to Jackson, Higgins turned and pointed the gun at Rocque. Rocque began running up the stairs, but he tripped and fell. Rocque said he looked around, but could not see Higgins or Jackson. He then ran down the stairs and peeked around the corner. Rocque saw Higgins pointing the gun at Jackson, who was saying "I ain't got nothing. I don't have nothing." Rocque said that he could not see the defendant's face at that time, but knew it was the same person he had seen earlier because the man was wearing the same clothing as he had seen before.

---

[20]   The above facts are taken from the opinion of the Fifth Circuit Court of Appeals in *State v. Higgins*, 01-KA-368 (La. App. 5 Cir. 10/17/01), 800 So.2d 918, 920.

Rocque ran back to the apartment to tell Boudreaux that Jackson was getting robbed, and to obtain a weapon. However, while inside the apartment, Rocque heard gunfire. When he looked out of the window, Rocque saw Jackson lying on the ground. By the time Rocque returned downstairs, Jackson was dead.

Rocque admitted that he initially told the officers he did not know what had happened. Later that night he told the police that he saw the assailant, but did not see the actual shooting. Rocque said he described the person he had seen to the police, and a sketch was drawn. The next morning, Deputy Michael Tucker complied a six-person photograph lineup containing the defendant's photograph, and Rocque identified the defendant as the assailant. Because Rocque was not absolutely certain about his identification, Deputy Tucker showed Rocque another six-person photographic lineup containing a more recent photograph of the defendant. When Rocque viewed the second lineup, he positively identified the defendant.

## STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted April 24, 1996, imposes a one-year period of limitations on petitions for a writ of habeas corpus filed by persons in custody pursuant to a judgment of a state court.   See Antiterrorism and Effective Death Penalty Act, Pub.L. 104-132, 110 Stat. 1214 (1996).   In most cases, the limitations period begins to run when the judgment becomes final after direct appeal or the time for seeking such review has expired. 28 U.S.C. §2244(d)(1)(A).  The limitation period is tolled while a properly filed application for state post-conviction relief or other collateral review is pending.  28 U.S.C. §2244(d)(2).  An application is "properly filed" when it "conforms with a state's applicable procedural filing requirements," defined as "those prerequisites that must be satisfied before a state court will allow

a petition to be filed and accorded some level of judicial review." *Williams v. Cain*, 217 F.3d 303, 306 (5th Cir. 2000). A case is no longer deemed "pending" when further appellate review is unavailable, and an application seeking post-conviction relief ceases to be "pending within the meaning of Section 2244(d)(2) when a petitioner fails to file a timely application for supervisory writs. *See Williams*, 217 F.3d at 309-310.

In this case, petitioner's became final after direct appeal when the United States Supreme Court denied his petition for writ of certiorari on May 19, 2003. As such, petitioner's conviction became final on May 19, 2003, and the one year limitations period commenced to run on May 20, 2003. The limitations period then ran unabated until May 12, 2004, when the defendant filed his *Application for Post Conviction Relief.* Petitioner's application for post conviction relief remained pending until the Louisiana Supreme Court denied his application for supervisory writs on January 30, 2009. *State ex rel Higgins v. Cain*, 08-KP-52 (La. 1/30/09) 999 So.2d 741. Thus, the running of the statute of limitations was tolled from May 12, 2004 until January 30, 2009.

On January 30, 2009, petitioner had eight days remaining in which to file a timely application for federal habeas relief. Therefore, it appears that Petitioner's instant petition, which was filed on February 4, 2009, is timely filed.

## FAILURE TO EXHAUST STATE COURT REMEDIES HAS RESULTED IN A "MIXED PETITION"

Petitioner presents this Court with a "mixed petition" containing both exhausted and unexhausted claims. It is well settled that a habeas petition must be dismissed if any issue has not been exhausted in the state courts. *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Ex Parte Royall*, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886); *Thomas v. Collins*, 919

F.2d 333, 334 (5th Cir. 1990), cert denied, 111 S.Ct. 2862, 115 L.Ed.2d 1029 (1991); 28 U.S.C. 2254(b),(c).  The requirement is based in part upon the pragmatic recognition that "federal claims that have been fully exhausted in state courts will more often be accompanied by a complete factual record to aid the federal courts in their review."  *Castille v. Peoples*, 489 U.S. 346, 349, 109 S.Ct. 1056, 1059 (1989), quoting *Rose*, 455 U.S. at 519, 102 S.Ct. at 1203-1204.  The exhaustion doctrine requires that state courts be given the initial opportunity to address and, if necessary, correct alleged deprivations of federal constitutional rights.  *Duckworth v. Serrano*, 454 U.S. 1,3, 102 S.Ct. 18, 19 (1981); *Satterwhite v. Lynaugh*, 886 F.2d 90, 92 (5th Cir 1989); 28 U.S.C. 2254(b)(1)(A).

To exhaust his state remedies, a habeas petitioner must fairly present the substance of his claim to the state courts.  *Finley v. Johnson*, 243 F.3d 215 (C.A.5 Tex., 03/08/ 2001), citing *Picard v. Connor*, 404 U.S. 270, 275-76, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). The exhaustion requirement is not met if the petitioner presents new legal theories or factual claims in his federal habeas petition. Id., citing *Anderson v. Harless*, 459 U.S. 4, 6-7, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982).  Moreover, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made."  *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982)(citation omitted).

In the instant case, Respondent submits that Petitioner's first three claims are unexhausted, because he did not present the factual and/or legal substance of his claims in the state courts:

1.      **Petitioner's Claim that Systemic Discrimination in the Selection of the Jefferson Parish Juries Deprived Him of His Rights to an Impartial Jury and to Due Process of Law is Unexhausted Due to Petitioner's Failure to Present the Factual Substance of His Claim in State Court.**

In Petitioner's first claim, he contends that systemic discrimination in the selection of the Jefferson Parish juries deprived him of his rights to an impartial jury and to due process of law. Briefly, petitioner alleges that he did not receive a full and fair hearing on this claim in state court, and that if he had, he would have established that:

> a) there is a historical and current pattern of discrimination in jury selection in Jefferson parish that manifested itself in his case with the state using five peremptory strikes to remove all but one African-American from the petit jury;

> b) the trial court erroneously found no *prima facie* evidence of discrimination when ruling on his *Batson* challenge during jury selection;

> c) the trial court did not require the state to offer explanations for several of the peremptory challenges against minority jurors and that it accepted as race neutral an explanation offered for a minority juror that was pre-textual and unsupported by the record;

> d) the prosecutor exercised peremptory challenges to remove African-Americans based upon his lack of personal comfort with them; and

> e) verifiable statistical and historical evidence confirms a strong history of discrimination by the state in Jefferson Parish.

In factual substance, this is not the same claim that the petitioner presented to the state district court, or to the Louisiana Supreme Court in writ application number 08-KP-0052.

In writ application number 08-KP-0052, petitioner also presented an assignment of error entitled *Systemic Discrimination in the Selection of Jefferson Parish Juries Deprived Mr. Higgins of His Rights to an Impartial Jury and to Due Process of Law.*  However, in petitioner's writ

application he argued only that the State's use of peremptory challenges should be reconsidered in light of the following reports, which he characterized as newly discovered evidence: Bourke R. And Hingston J., *Blackstrikes: A study of the racially disparate use of peremptory challenges by the Jefferson Parish District Attorney's Office* (September 2003), and Devine, J. *Jefferson Parish Prosecutorial Peremptory Challenge Probabilities,* (September 23, 2003). Petitioner alleged only that the defense had on two occasions objected to the State's use of its peremptory challenges citing *Batson*.[21] Otherwise, the petitioner supported his argument with no factual claims concerning what had occurred during voir dire. In the state courts, petitioner did not allege any the following: that the State used five of its peremptory challenges to remove African-Americans from the jury; that the trial court erroneously found no *prima facie* evidence of discrimination when ruling on his *Batson* challenge during jury selection; that the trial court did not require the state to offer explanations for several of the peremptory challenges against minority jurors; or that it accepted as race neutral an explanation offered for a minority juror that was pre-textual and unsupported by the record.[22]

---

[21] R., Vol. 11, Writ Application No. 08-KP-0052 at p. 16

[22] In his petition, Petitioner states that he "sought to procure the record of voir dire to bolster the defense's claim; the state court refused to allow him to supplement his argument or the record with the transcript of the voir dire." *Petition* at p. 16. Petitioner further states that he subsequently obtained a transcript of the February 22, 2000 voir dire proceeding. *Id.* The respondent would note that petitioner's conviction became final on May 19, 2003. Therefore, petition had approximately four years and three months from the date on which his conviction became final in which to obtain the February 22, 2000 transcript before the state district court denied his post conviction claims pertaining to his *Batson* claim and appellate counsel's failure to raise same on appeal on September 12, 2007. Respondent would also note that petitioner only filed his *Motion to Complete Post Conviction Record with Voir Dire Transcript and for Leave to File an Amended and Supplemental Post Conviction Application* after the trial court had already denied those claims.

It is true that petitioner noted in his *Supplement to Application for Post Conviction Relief* that he had been unable to obtain the February 22, 2000 transcript due to lack of funds (R., Vol. 2, *Supplemental App.* at p. 15, fn. 10), and also that in his *Reply to the State's Response to*

Should this Honorable Court determine that petitioner's first claim is exhausted, the respondent reserves the right to answer this claim on the merits, and/or raise additional procedural objects thereto.

**2.      Petitioner's Claim that He Received Ineffective Assistance of Appellate Counsel is Unexhausted Due to His Failure to Present the Factual Substance/ Legal Substance of His Claim in State Court.**

Petitioner's second claim for relief alleges that he received ineffective assistance of counsel on appeal.  He contends that: 1) appellate counsel was ineffective for failing to obtain a transcript of the voir dire proceedings held on February 22, 2000 and failing to brief the *Batson* issue on direct appeal; and 2) a reasonable probability exists that the state appellate court would have granted *Batson* relief had appellate counsel raised the issue on direct appeal.[23]  In support of the second contention, the petitioner alleges the following:

> a) the trial judge erroneously failed to find a prima facie *Batson* case after the state had successfully challenged one prospective African-American juror for cause and used its peremptory challenges to strike

---

*Defendant's Post Conviction Application* filed on March 8, 2007, he stated that he was in the process of obtaining the transcripts (R., Vol. 3, *Reply* at  p. 4).  However, the record does not reflect that petitioner moved to stay the proceedings pending his receipt of the transcripts, or that petitioner sought the state district court's assistance in obtaining the transcripts.

Moreover, although petitioner contends his indigence prevented him from obtaining the transcripts at an earlier date, the record does not reflect that petitioner filed an application for a free transcript of the voir dire proceedings based upon a showing of particularized need.  *See*, *State ex rel. Simmons v. State*, 93-0275 (La. 12/16/94), 647 So.2d 1094.

[23]  *Petition for Writ of Habeas Corpus*, at pp. 12-19. Petitioner also generally contends that thirteen hearing dates were neither transcribed nor requested by appellate counsel, including the voir dire proceedings of February 22, 2000.  While he specifically alleges that the transcript of the voir dire was "urgently needed to properly litigate"his appeal (*Petition for Writ of Habeas Corpus* at p. 13) , he concedes that many of the other dates he cites "appear to be simply be hearings at which the matter was simply called and continued" (*Petition* at p. 13), and lists others as being only "potentially significant"(*Petition* at p. 14).

> three out of the four remaining prospective African-American jurors on the first panel;[24]
>
> b) the trial court committed reversible error by determining that the state's exclusion of juror Penn was not racially motivated without making any specific credibility findings on the record, without conducting the third *Batson* step, and despite the fact that the state's proffered reasons for the strike do not survive scrutiny.[25]

Respondent submits that Petitioner's second claim is unexhausted due to his failure to present the factual/legal substance of his claim in the state courts.

In writ application number 08-KP-0052, presented a claim to the Louisiana Supreme Court in which he argued that he received ineffective assistance of appellate counsel. However, although the petitioner alleged that appellate counsel was ineffective for failing to appeal the denial of the two *Batson* objections which were reflected in the minute entry of February 22, 2000, he did not make a more specific factual or legal argument in support of the claim that he received ineffective assistance of counsel in this respect. In the state courts, petitioner did not allege that the trial court erroneously failed to find a *prima facie* evidence of racial discrimination, he did not raise specific allegations concerning the number of African Americans peremptorily challenged by the State, and he did not make any allegations concerning any race neutral reasons proffered by the state.[26]

In the state courts, petitioner's ineffective assistance of counsel claim focused on what appellate counsel did not do. Petitioner did not attempt to establish the second prong of the

---

[24] *See, Petition* at pp. 20-23.

[25] *See*, *Petition* at pp. 23-26.

[26] *See,* fn. 22, supra.

*Strickland* test; that is, he did not argue or attempt to demonstrate that an appellate court would have granted relief if this claim were raised.

Should this Honorable Court determine that petitioner's second claim is exhausted, the respondent reserves the right to answer this claim on the merits, and/or raise additional procedural objects thereto.

    **3.**      **Petitioner's Third Claim, in Which He Alleges that Appellate Counsel's Failure to Request and Review the Complete Trial Transcript Constitutes *Cronic* Error Because a Complete Breakdown in the Adversarial Process Occurred When Constitutional Defects at Trial Went Unexplored on Direct Appeal, is Unexhausted Due to Petitioner's Presentation of These Claims Under a New Legal Theory.**

In his third claim for relief, Petitioner contends that Appellate Counsel's failure to request and review the transcript of every proceeding in this matter constitutes error because a complete breakdown in the adversarial process occurred when constitutional defects at trial went unexplored on direct appeal, citing the United States Supreme Court's decision in *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 674 (1984). In support of his claim, petitioner summarily alleges that appellate counsel failed to: 1) request transcripts of some thirteen trial dates, 2) raise a state court evidentiary issue (the impeachment of a defense witness with her prior inconsistent statements) on appeal, and 3) raise numerous other issues on appeal. Respondent submits that Petitioner presents a new legal theory for relief on his claim.

In Louisiana Supreme Court Writ Application number 08-KP-0052, petitioner contended that he received ineffective assistance of counsel on appeal, citing the Sixth and Fourteenth Amendments to the United States Constitution and *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80

L.Ed.2d 674 (1984).[27] Respondent submits that Petitioner thereby indicated that his ineffective assistance of appellate counsel claims should be analyzed under the two-pronged test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), whereby a criminal defendant alleging ineffective assistance of counsel must show that (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him.

Of significance, in writ application number 08-KP-0052, petitioner did not argue that he was entitled to a presumption of prejudice under *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).[28]   Therefore, the respondent submits that the petitioner's third claim is unexhausted as it presents a legal theory for relief that was not presented in the state courts.

Should this Honorable Court determine that petitioner's third claim is exhausted, the respondent reserves the right to answer this claim on the merits, and/or raise additional procedural objects thereto.

---

[27]   Under the two-pronged test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a criminal defendant alleging ineffective assistance of counsel must show that (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him. The error is prejudicial if it was so serious as to deprive him of a fair trial, or "a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct. at 2064. In order to show prejudice, the defendant must demonstrate that, but for counsel's unprofessional conduct, the outcome of the trial or proceeding would have been different. *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068.

[28]   In *Cronic*, decided the same day as *Strickland*, the Court identified three situations implicating the right to counsel involving circumstances "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Bell v. Cone*, 122 S.Ct. 1843 (2002), quoting *Cronic*, 466 U.S. at 658-659.   Prejudice is presumed where the accused was denied counsel at a critical stage of criminal proceeding, where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, and where, in cases like *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), counsel is called upon to render assistance under circumstances where competent counsel very likely could not.   *Cronic*, supra at 659-662, 104 S.Ct. 2039.

## STANDARD OF REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214. The standard of review is governed by 28 U.S.C. 2254(d). As recognized by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000), "§ 2254 (d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." Under AEDPA, claims adjudicated on the merits in state court proceedings are subject to the following standard of review:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim - -
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d).

The Supreme Court has clarified that a decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 120 S.Ct. at 1523. With regard to the "unreasonable application" clause, the Court has held that a federal habeas court may grant the writ only if the state court unreasonably applies the correct governing legal principle to the facts of the

prisoner's case.  *Id.*  "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Williams v. Taylor*, 120 S.Ct. at 1521.  As noted by the United States Fifth Circuit, because the standard of review is one of objective reasonableness, "mere disagreement" with the state court is not enough to warrant relief.  *Orman v. Cain*, 228 F.3d 616, 619 (5th Cir. 2000).  Under 28 U.S.C. 2254(e)(1), the state court's findings are entitled to a presumption of correctness.  Most importantly, pursuant to 28 U.S.C. 2254(e)(1), the petitioner bears the burden of rebutting this presumption of correctness by clear and convincing evidence.

## PROCEDURAL DEFAULT

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the merits of the federal claim and adequate to support that judgment.  *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir.), *cert. denied*, 116 S.Ct. 557, 133 L.Ed.2d 458 (1995), *citing Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 1043 103 L.Ed.2d 308 (1989).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  *Amos*, 61 F.3d at 338. (citations omitted).  Procedural default does not bar federal court review of a federal claim raised in a *habeas* petition unless the last state court rendering a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  *Harris*, 489 U.S. at 263, 109 S.Ct. at 1043.

Furthermore, it is well settled that when a state-law default prevents a state court from reaching the merits of a federal claim, that claim can not be reviewed in federal court, unless petitioner can establish "cause and prejudice" for the default, or show that failure to review the claim

19

would result in a complete miscarriage of justice.  *Wainwright v. Sykes*, 433 U.S. 72, 87-88, 97 S.Ct. 2497, 2506-2507, 53 L.Ed.2d 594 (1977); *Murray v. Carrier*, 477 U.S. 478, 485-92, 106 S.Ct. 2639, 2646-2648, 91 L.Ed.2d 397 (1986); *Ylst v. Nunnemaker*, 111 S.Ct. 2590, 2593 (1991); Boyd v. Scott, 45 F.3d 876, 880 (5th Cir. 1994) cert. denied 115 S.Ct. 1964, 131 L.Ed.2d 855.  In *Murray*, 477 U.S. at 494-54, 106 S.Ct. at 2649, the High Court held that a showing of both cause and actual prejudice is required to avoid the procedural bar.  Thus if the petitioner fails to establish cause for his procedural default, the Court need not consider the prejudice prong**.**  *Glover v. Hargett*, 56 F.3d 682, 684 (5th Cir. 1995), cert. denied 116 S.Ct. 726, 133 L.Ed.2d 678 (1996), citing *Murray*, 477 U.S. at 494-95, 106 S.Ct. at 2649.

Respondent submits that petitioner's fourth claims is procedurally defaulted. In his fourth claim, Petitioner contends that he received ineffective assistance of trial counsel, alleging that counsel was ineffective for failing to: conduct a basic investigation; object to impermissible testimony or the grand jury indictment; apply for state funds to hire an investigator, crime scene expert, or DNA expert; request a competency hearing; provide the petitioner with accurate advice concerning matters in which his prerogative should have prevailed; adequately raise and litigate pretrial evidentiary and discovery issues; move to quash the venire; insure that the jury instructions adequately guided the jury; and file a motion for new trial.

In the last reasoned state court decision specifically addressing the petitioner's fourth claim, the state district court's *Order* of September 12, 2007, the State district court found as follows:

> The petitioner also complains that his retained attorney, Martin Regan, rendered ineffective assistance because of a lack of funds.  The petitioner states that he was unable to retain an investigator and independent experts in crime scene analysis, mental health, or DNA.  He argues that counsel should have petitioned the court for state funds to hire such experts.

20

In other claimed instances of ineffective assistance of counsel, the petitioner complains that his attorney did not request a competency hearing, did not properly advise him, did not litigate pretrial issues, did not obtain adequate jury instructions, and did not move for a new trial.  The state responds to these complaints by noting that all of these accusations are conclusory and therefore not in compliance with LSA-C.Cr.P. art. 926(B)(3) and (E).

These codal articles provide that a petition for post-conviction relief must contain a statement of the grounds upon which relief is sought and it must specify with reasonable particularity the factual basis for such relief.  LSA-C.Cr.P. art. 926(B)(3).  Upon review of the record, this court determines that the "other instances" of ineffective assistance fail to specify the factual basis for relief.  The petitioner has not met his burden of proof on these claims and further discussion is not warranted.  Relief on this claim will be denied.

*Order* of 9/12/07.[29]   It is the Respondent's position that the state district court correctly found that the petitioner's claims should be denied on procedural grounds based upon his failure to specify the factual basis for relief as required by the provisions of LSA-C.Cr.P. art. 926 (B)(3).  Moreover, respondent has failed to show cause or prejudice for the default.

Respondent submits that petitioner's fourth claim is procedurally defaulted.  Should this Honorable Court determine that petitioner's claims are not subject to procedural default, respondent reserves the right to answer petitioner's fourth claims on the merits.

## LAW AND ARGUMENT

## CLAIM FIVE: ALLEGATION THAT PETITIONER'S RIGHTS TO COUNSEL, CONFRONTATION, AND THE PRESUMPTION OF INNOCENCE WERE VIOLATED WHEN THE JURY PREMATURELY DELIBERATED UPON THE CREDIBILITY OF A WITNESS

In his fifth claim, the petitioner contends that a juror made a comment on the credibility of a witness before deliberations began and without all jurors being present.  The comment in question is the alleged remark by one juror to another that a certain state witness was a "hoochie mama,"

---

[29]  R., Vol. 3.

which petitioner contends is a racially derisive remark.  Petitioner contends that the trial courts denial of relief on this issue is contrary to the United States Supreme Court's decision in *Turner v. Louisiana* 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed. 2d 424 (1965).  This claim has no merit.

The last reasoned state court decision to address petitioner's claim is the state district court's *Order* of September 12, 2007, wherein the state district court denied petitioner's claim as follows:

Inquiry into the validity of a verdict is expressly prohibited by the jury shield law, LSA-C.E. art. 606(B).  This statute provides as follows:

Upon an Inquiry into the validity of a verdict or indictment, **a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith**, except that a juror may testify on the question whether any outside influence was improperly brought to bear upon any juror, and, in criminal cases only, whether extraneous prejudicial information was improperly brought to the jury's attention.  Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

As held by the [Louisiana] Fifth Circuit Court of Appeal, this statutory bar against inquiring into jury proceedings serves the important function of maintaining both the confidentiality and finality of jury verdicts and of the confidentiality of the jurors' deliberations.  *State v. Videau*, 04-923 (La. App. 5 Cir. 3/1/05), 900 So.2d 855, 863.

Pre-deliberation comments between jurors have been held to violate the judge's instructions, but not to constitute an impermissible outside influence.  *State v. Weaver*, 917 So.2d 600, 612, 05-169 (La. App. 5 Cir. 11/29/05), *writ denied*, 944 So.2d 1277, 2006-0695 (La. 12/15/06).  Based on *Weaver* and the cases cited therein, as well as the express language of the jury shield law itself, this court will deny relief.

Notably, even on the merits this claim is unpersuasive.  In support of his contention that he was prejudiced, the petitioner relies on the *Urban Dictionary*, an internet site, located at urbandictionary.com.  The *Urban Dictionary* itself states that if defines contemporary slang "whose terms and definitions are solely user-generated and user-rated."  The site allows its "users to create definitions for slang words and phrases and submit them for publications."  It is estimated in one court opinion that 37 percent of *Urban Dictionary's* users are from overseas.  *American Civil Liberties*

*Union v. Gonzales*, 478 F.Supp.2d 775 (E.D. Pa. 2007).

> The court finds that the *Urban Dictionary* is completely lacking in credentials.  This user-generated website lacks any value as persuasive authority.  On the other hand, Merriamwebster.com a web based site of a legitimate, authorized dictionary, defines "hoochie" as a slang word "a sexually promiscuous young woman."  With this definition in mind, the court concludes that the petitioner's contention that the term "appears to implicate" the race of the witness is unfounded.

> Moreover, even assuming the alleged comment was made by one juror and heard by another, nothing in this comment deprived the petitioner of a fair trial.  Additionally, nothing in the comment addressed the credibility or truthfulness of the witness.

> Both factually and legally, this claim of jury misconduct comes far short of meeting the petitioner's necessary burden of proof.  Based on the inadequate showing made in connection with this claim, there is no basis for post-conviction relief and relief will be denied.

*Order* of 9/12/07.[30]  Petitioner has failed to establish that the state district court's decision was contrary to clearly established Federal law, as determined by the Supreme Court of the United States.

First, the United States Supreme Court has recognized that there is a well-established federal common-law principle that the testimony of a juror is incompetent to impeach a verdict absent a showing that an external or extraneous influence was brought to bear on the jury's deliberations:

> By the beginning of this century, if not earlier, the near-universal and firmly established common-law rule in the United States flatly prohibited the admission of juror testimony to impeach a jury verdict.

> Exceptions to the common-law rule were recognized only in situations in which an "extraneous influence" was alleged to have affected the jury.

*Tanner v. United States*, 483 U.S. 107, 117, 107 S.Ct. 2739, 2745, 97 L.Ed.2d 90 (1987)(citations omitted).  In *Tanner*, the United States Supreme Court rejected Tanner's contention that the district court erred in not ordering an additional evidentiary hearing at which jurors would testify concerning

---

[30]  R., Vol. 3.

23

their alleged drug and alcohol use during the trial. *Tanner*, 483 U.S. 116-127.

Moreover, although the state district court's decision was based upon the provisions of LSA-C.E. art. 606(B), respondent would note that this provision of the Louisiana rule is almost identical to Federal Rule of Evidence 606(B), which also precludes jurors from testifying to impeach a jury verdict except as to 1)extraneous prejudicial information brought to the jury's attention; 2) outside influence brought to bear on any juror, or 3) whether there was a mistake in entering the verdict on the verdict form.

In the instant case, petitioner's allegation does not present a claim of extraneous prejudicial information being brought to the jury's attention.   The instant matter is easily distinguished from the issues presented  in the cases cited by petitioner. *See*, *Turner v. Louisiana* 379 U.S. 466, 471, 473-474, 85 S.Ct. 546, 13 L.Ed. 2d 424 (1965), (Fourteenth Amendment violated where two deputy sheriffs, who were witnesses for the prosecution in a first degree murder trial, were in a "continuous and intimate "association with the sequestered jurors, "which could not but foster the jurors' confidence in those who were their official guardians during the entire period of the trial); *United States v. Resko*, 3 F.3d 684 (3d Cir. 1993), (holding on direct appeal that the district court erred in refusing to conduct a more searching inquiry into defendant's **midtrial** motion for mistrial based upon alleged juror misconduct).

## RESERVATION OF RIGHTS

Respondent would respectfully reserve the right to submit argument on the merits, and/or additional procedural objections in the event that this Court determines that petitioner's petition should not be dismissed for failure to exhaust state court remedies.

## CONCLUSION

Wherefore, the respondent respectfully submits that petitioner's petition should be denied for failure to exhaust state court remedies.

Respectfully submitted,

/s/ Juliet Clark
Juliet Clark, La. Bar No. 23451
Assistant District Attorney
24th Judicial District
Parish of Jefferson
200 Derbigny Street
Gretna, Louisiana 70053
(504) 368-1020

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing response upon counsel for petitioner, by placing a copy of the same in the United States Mail, this the 1st day of June, 2009, postage prepaid and properly addressed to:

William Sothern
636 Baronne Street
New Orleans, Louisiana 70113
*Attorney for Shawn Higgins*

This the 1st day of June, 2009.
New Orleans, Louisiana.

/s/ Juliet Clark

25