UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SHAWN HIGGINS                                    CIVIL ACTION

versus                                           NO. 09-2330

BURL CAIN, WARDEN                                SECTION: "I" (3)

REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITHOUT PREJUDICE**.

I. Procedural History

Petitioner, Shawn Higgins, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On February 26, 2000, he was convicted of second degree murder

in violation of Louisiana law.¹ On March 3, 2000, he was sentenced to a term of life imprisonment without benefit of parole, probation, or suspension of sentence.² On October 17, 2001, the Louisiana Fifth Circuit Court of Appeal affirmed that conviction and sentence.³ Petitioner's related writ applications were then denied by the Louisiana Supreme Court on November 1, 2002,⁴ and by the United States Supreme Court on May 19, 2003.⁵

On May 12, 2004, petitioner filed with the state district court a *pro se* application for post-conviction relief.⁶ That application was later supplemented by counsel on October 4, 2006.⁷ On September 12, 2007, the state district court set one of petitioner's claims for an evidentiary hearing and denied the remaining claims.⁸ Petitioner's related writ applications challenging that

---

¹ State Rec., Vol. X of XII, transcript of February 26, 2000, p. 192; State Rec., Vol. I of XII, minute entry dated February 26, 2000; State Rec., Vol. I of XII, jury verdict form.

² State Rec., Vol. X of XII, transcript of March 3, 2000; State Rec., Vol. I of XII, minute entry dated March 3, 2000.

³ State v. Higgins, 800 So.2d 918 (La. App. 5th Cir. 2001) (No. 01-KA-368); State Rec., Vol. I of XII.

⁴ State v. Higgins, 828 So.2d 565 (La. 2002) (No. 2001-KO-3267); State Rec., Vol. I of XII.

⁵ Higgins v. Louisiana, 538 U.S. 1038 (2003) (No. 02-9516); State Rec., Vol. I of XII.

⁶ State Rec., Vol. I of XII.

⁷ State Rec., Vol. II of XII.

⁸ State Rec., Vol. III of XII, Order dated September 12, 2007.

order were denied by the Louisiana Fifth Circuit Court of Appeal on December 7, 2007,[9] and by the Louisiana Supreme Court on January 30, 2009.[10]

In the interim, after holding evidentiary hearings, the state district court denied petitioner's remaining post-conviction claim on December 13, 2007.[11] The Louisiana Fifth Circuit Court of Appeal then denied petitioner's related writ application on February 25, 2008,[12] and he did not seek review of that judgment by the Louisiana Supreme Court.

Petitioner, through counsel, filed the instant *habeas corpus* petition on February 4, 2009.[13] On June 1, 2009, the state filed a response in opposition.[14] Petitioner was then granted leave to file a reply, which was filed on September 28, 2009.[15]

## II. Timeliness

In its response in this proceeding, the state notes that petitioner's federal application appears to be timely.[16] This Court agrees.

---

[9] Higgins v. Cain, No. 07-KH-811 (La. App. 5th Cir. Dec. 12, 2007) (unpublished); State Rec., Vol. III of XII.

[10] State *ex rel.* Higgins v. Cain, 999 So.2d 741 (La. 2009) (No. 2008-KP-0052); State Rec., Vol. XI of XII.

[11] State Rec., Vol. III of XII, minute entry dated December 13, 2007.

[12] Higgins v. Cain, No. 07-KH-1040 (La. App. 5th Cir. Feb. 25, 2008) (unpublished); State Rec., Vol. III of XII.

[13] Rec. Doc. 1.

[14] Rec. Doc. 11.

[15] Rec. Doc. 16.

[16] Rec. Doc. 11, p. 7.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his underlying criminal judgment becomes "final." Under the AEDPA, a judgment is considered "final" upon the expiration of time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A).[17]

In the instant case, petitioner's conviction became final when the United States Supreme Court denied relief on direct review on May 19, 2003. See Giesberg v. Cockrell, 288 F.3d 268, 270-71 (5th Cir. 2002). Pursuant to 28 U.S.C. § 2244(d)(1)(A), the period that he had to file his federal application for *habeas corpus* relief commenced on that date and expired one year later, unless that deadline was extended through tolling.

The Court first considers statutory tolling. The AEDPA provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court. 28 U.S.C. § 2244(d)(2).

After three hundred fifty-eight (358) days elapsed, petitioner tolled the federal limitations period on May 12, 2004, by filing a post-conviction application with the state district court. Tolling then continued uninterrupted for the duration of the post-conviction proceedings, so long as he sought supervisory review in a timely manner. Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-70 (5th Cir. 2004). The state does not contest the timeliness of petitioner's related writ applications in the instant case. Accordingly, the Court finds that his

---

[17] Although § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, the alternative provisions are not applicable in the instant case.

limitations period remained tolled until January 30, 2009, the date on which the post-conviction proceedings concluded with the issuance of the Louisiana Supreme Court's judgment.

At that point, petitioner had seven (7) days of the federal limitations period remaining. Because he filed his federal application five (5) days later on February 4, 2009, the application is timely.

### III. Exhaustion

The state does, however, challenge petitioner's exhaustion of his state court remedies with respect to the first three claims listed in his federal application.[18] Pursuant to 28 U.S.C. § 2254(b)(1)(A), a petitioner normally must first exhaust his remedies in state court before seeking *habeas corpus* relief from the federal courts. "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts." Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (internal quotation marks omitted). Generally, the exhaustion requirement is satisfied only when the grounds urged in a federal petition were previously presented to the state's *highest court* in a procedurally proper manner according to state court rules. Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir. 1988). Moreover, exhaustion is determined based solely on the claims expressly presented to the state's highest court, because that court is not required to review prior decisions or briefs in the case to ferret out what claims a petitioner may be asserting. See Baldwin v. Reese, 541 U.S. 27, 31-32 (2004). Therefore, to determine whether the instant claims are exhausted, this Court must

---

[18] The state concedes that the fourth and fifth claims listed in petitioner's federal application are exhausted. Rec. Doc. 11, p. 7.

compare the claims asserted in petitioner's federal application to the ones he asserted in his Louisiana Supreme Court writ applications.

A. Batson Violation

Petitioner's first federal claim is that he was denied his right to an impartial jury and due process of law through the systemic discrimination in the selection of Jefferson Parish juries in violation of Batson v. Kentucky, 476 U.S. 79 (1986). The state correctly notes that petitioner included a Batson claim in his Louisiana Supreme Court writ application filed in case number 08-KP-0052.[19] In the state writ application, petitioner argued that the rejection of his two Batson challenges should be reconsidered in light of subsequent reports by J. Bourke and R. Hingston and by J. Devine, as well as a state court case (State v. Edward Harris), establishing that the Jefferson Parish District Attorney's Office had a history of using peremptory strikes in a racially discriminatory fashion.

The state argues that petitioner's claim as presented in his federal application is unexhausted because it significantly differs from that claim presented to the Louisiana Supreme Court. If true, that is fatal in this proceeding, because the United States Fifth Circuit Court of Appeals has held:

> A federal court claim must be the "substantial equivalent" of one presented to the state courts if it is to satisfy the "fairly presented" requirement. The habeas applicant need not spell out each syllable of the claim before the state court to satisfy the exhaustion requirement. This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application.

---

[19] State Rec., Vol. XI of XII, writ application (No. 08-KP-0052), pp. 7-10.

Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (footnotes omitted).  For the following reasons, this Court finds that the Batson claim presented here is *not* the substantial equivalent of the one presented to the Louisiana Supreme Court.

In his federal application, petitioner argues:

(1) "[T]here is an historical and current pattern of discrimination in jury selection in Jefferson Parish that manifested itself in his case with the state's use of five peremptory strikes to remove all but one African-American from the petit jury."[20]

(2) "[T]he trial court erroneously found no *prima facie* evidence of discrimination, that it did not require the State to offer explanations for several of the peremptorily challenges against minority jurors, and that it accepted as race neutral an explanation offered for a minority juror that was pre-textual and unsupported by the record."[21]

(3) Evidence showed "that the prosecutor in this case struck black jurors based upon his lack of personal comfort with them."[22]

(4) "[V]erifiable statistical and historical evidence ... confirm[ed] a strong history of discrimination by the state in Jefferson Parish," specifically including the reports by R. Bourke and J. Hingston and

---

[20] Rec. Doc. 1, p. 8.

[21] Rec. Doc. 1, pp. 8-9.

[22] Rec. Doc. 1, p. 9.

– 7 –

by J. Devine, and the state courts wrongly rejected such evidence and refused to hold a hearing on the claim.[23]

In light of the foregoing, it is clear that this claim is indeed substantially different from the claim presented in state court. In petitioner's state post-conviction application, as amended by counsel, his Batson claim was premised solely on a contention that he should be granted relief based on the fact that the subsequent reports by Bourke and Hingston and by Devine and the subsequent case of State v. Edward Harris established that the Jefferson Parish District Attorney's Office had a history of using peremptory strikes in a racially discriminatory fashion.[24] Both the state's response to that application and petitioner's reply to that response likewise addressed only that contention.[25]

In rejecting the claim, the state district court's ruling was similarly narrow:

> As to the claim of systemic discrimination of jury selection, the petitioner argues that the prosecution improperly used peremptory challenges to remove potential black jurors. To support this claim, the petitioner cites to an unpublished report entitled, *Blackstrikes: A study of the racially disparate use of peremptory challenges by the Jefferson parish District Attorney's office*, released September 2003. He also cites to a report by Professor Joel Devine of Tulane University.
> Significantly, the defense brief makes numerous references to the introduction of these same reports in the Jefferson Parish case of *State v. Edward Harris*, 03-0411. Harris was granted a new trial by

---

[23] Rec. Doc. 1, pp. 9-10.

[24] State Rec., Vol. II of XII, Supplement to Application for Post-Conviction Relief, pp. 6-8.

[25] State Rec., Vol. II of XII, State's Response to Defendant's Post Conviction Application, pp. 9-10; State Rec. Vol. III of XIII, Reply to the State's Response to Defendant's Post Conviction Application, pp. 2-3.

the Supreme Court of Louisiana, based on comments of the prosecutor during jury selection. *State v. Harris*, 820 So.2d 471, 2001-0408 (La. 6/21/02). In a hearing on Harris' motion to bar re-prosecution due to "racism and civil rights violations," the defense introduced the *Blackstrikes* article. The court denied the motion to bar retrial. Thus, it is seen that the reports the defense cites in brief have not been relied on as persuasive by a court in this judicial district. Critically, unlike the *Harris* case, the petitioner has not pointed to a remark made by the prosecutor during jury selection. In brief, the petitioner cites only to cases applying *Batson* and selected social science reports.[26]

The trial court also went on to note that, in any event, petitioner waived any Batson claim by not asserting it on direct appeal and, further, he had not pointed the court to any proof of a Batson violation in his particular case.[27]

As previously noted, and most importantly for exhaustion purposes, the narrow focus of the claim, i.e. that petitioner was entitled to relief based solely of the historical evidence noted in the reports and in the Harris case, was continued in the writ application seeking the Louisiana Supreme Court's review.

In contrast, in his federal petition, petitioner seeks not only review of his claim that the district attorney had a *history of discrimination* but also review of a claim that the *voir dire* transcript reflects that *actual discrimination* occurred at *petitioner's particular trial*. Petitioner does not, and cannot legitimately, argue that the latter claim was ever presented to the Louisiana Supreme Court. Therefore, that claim is not exhausted. See Ries v. Quarterman, 522 F.3d 517, 524 (5th Cir.)

---

[26] State Rec., Vol. III of XII, Order dated September 12, 2007, pp. 3-4.

[27] State Rec., Vol. III of XII, Order dated September 12, 2007, p. 4.

(where a petitioner presented a "focused and specific" claim to the state courts, his broader, albeit related, claim presented to the federal court was unexhausted), cert. denied, 129 S.Ct. 485 (2008).

The Court notes that petitioner attempts to excuse his failure by arguing that he was not in possession of the *voir dire* transcript at the time the supplemental post-conviction application was filed or at the time the state district court denied the post-conviction Batson claim. He further notes that after his Batson claim was denied, he filed a motion with the state district court seeking leave "to complete his post conviction record with the currently-untranscribed voir dire record in this case and for leave to file an amended and supplemental post conviction review application when the voir dire transcript becomes available."[28] He complains he was never afforded that opportunity because that motion was denied.[29]

The undersigned rejects petitioner's excuse. If petitioner believed that his motion was wrongly denied, he could have sought review of that denial by the Louisiana Supreme Court and requested that the matter be remanded to the state district court for reconsideration of his Batson claim once the transcript was obtained.[30] He did not do so, and, as a result, the state courts, including the state's highest court, have never had a fair opportunity to pass upon the claim and

---

[28] State Rec., Vol. III of XII, Motion to Complete Post Conviction Record with Voir Dire Transcript and for Leave to File an Amended and Supplemental Post Conviction Application. That motion was filed September 20, 2007.

[29] State Rec., Vol. III of XII, Order dated September 24, 2007.

[30] It is unclear whether petitioner had the *voir dire* transcript at the time the Louisiana Supreme Court writ application was filed. However, it appears that he did, because counsel indicates in the federal application that the transcript was received while the matter was still before the state district court. See Rec. Doc. 16, p. 3.

substantial supporting evidence he now presents in this federal forum. Petitioner should not be allowed to circumvent the long-established rule requiring exhaustion simply because he prefers to present his fundamentally altered claim to this federal court in the first instance. See Anderson v. Johnson, 338 F.3d 382, 386-87 (5th Cir. 2003) (Dismissal on exhaustion grounds is unnecessary "when evidence presented for the first time in a habeas proceeding *supplements*, but does not *fundamentally alter*, the claim presented to the state courts"; however, "[c]ourts have explained that although a habeas petitioner will be allowed to present 'bits of evidence' to a federal court that were not presented to the state court, evidence that places the claims in a significantly different legal posture must first be presented to the state courts.") (internal quotation marks omitted)).

### B. Ineffective Assistance of Appellate Counsel (Strickland)

Petitioner's second claim is that his appellate counsel was ineffective under the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984). Specifically, petitioner faults his appellate counsel's failure to obtain a complete transcript and to pursue a Batson claim on appeal. Petitioner raised this same claim in Louisiana Supreme Court writ application number 08-KP-0052.[31]

The state argues that the claim is nevertheless unexhausted because petitioner now sets forth the allegations appellate counsel could have made in a Batson claim on direct appeal if he had possessed the transcript. However, the state and federal claim on this issue is premised on the same central contention, i.e. counsel should have procured the transcript and pursued a Batson claim. The additional allegations made for the first time here and the submission of the actual *voir dire*

---

[31] State Rec., Vol. XI of XII, writ application (No. 08-KP-0052), pp. 15-18.

transcript *arguably* simply supplement, but do not *fundamentally alter*, the claim presented to the state courts.  See Anderson, 338 F.3d at 386-88.  Therefore, although the call is a close one and perhaps could be decided in favor of the state, the undersigned will consider this claim to be exhausted.

### C.  Ineffective Assistance of Appellate Counsel (Cronic)

Petitioner's third claim is that his appellate counsel was ineffective under the standards set forth in United States v. Cronic, 466 U.S. 648 (1984), in the following respects:

> (1) Appellate counsel failed to obtain and review the entire transcript for possible errors;
>
> (2) Appellate counsel failed to pursue a claim that prejudicial hearsay was wrongly admitted at trial;
>
> (3) Appellate counsel failed to pursue "numerous other meritorious" claims, including:
>
>> (a) the state's Brady disclosures were late;
>>
>> (b) the trial court improperly curtailed petitioner's right to present a defense by examining witnesses concerning possible motives of others to kill the victim;
>>
>> (c) the trial court improperly denied petitioner's motion to have the jury view the crime scene;

(d) testimony regarding a gun unrelated to this crime was wrongly admitted into evidence;

(e) a police officer was wrongly permitted to give improper testimony on the ultimate issue in the case, stating his opinion that petitioner was the murderer;

(f) the state refused to disclose the full details of their immunity agreements with witnesses in violation of Brady;

(g) the trial court wrongly permitted a witness to comment negatively on the defendant's constitutional invocations of his right to silence and right to counsel;

(h) the trial court wrongly prohibited petitioner from presenting to the jury the state's motions to compel witness testimony;

(i) petitioner's trial was not open to the public; and

(j) the jury could overhear the bench discussion in a manner that was potentially prejudicial to petitioner.

Although petitioner made these same underlying allegations against his appellate counsel in Louisiana Supreme Court writ application number 08-KP-0052, the state argues that his claim is nevertheless unexhausted because his federal claim is asserted under a different legal theory. The state is correct.

In petitioner's Louisiana Supreme Court writ application, all of his ineffective assistance of appellate counsel allegations were presented in a single claim in which he alleged that counsel's performance was ineffective under the standards set forth in Strickland. In his federal application, petitioner split that claim in two parts. As noted, in Claim 2 of his federal application, petitioner alleges a violation of Strickland; however, he alleges a violation of Cronic in Claim 3. Petitioner did *not* allege a Cronic violation in his Louisiana Supreme Court writ application. As the state notes, that change in legal theory renders the claim unexhausted. See Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) ("This [exhaustion] requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application.").

In his reply to the state's response, petitioner's counsel disputes that contention by arguing that Strickland and Cronic are essentially variations on a single theme which are close enough to be interchangeable for the purposes of exhaustion. This Court disagrees. Although Strickland and Cronic both concern Sixth Amendment violations, the claims under each are distinct. Strickland deals with claims of "bad lawyering," where it is claimed that counsel's performance was so far below the standard of attorney competence that the defendant can show that actual prejudice resulted. Cronic, on the other hand, deals with claims of "no lawyering," where counsel was either totally absent or was prevented by surrounding circumstances from providing the effective assistance the Sixth Amendment contemplates. This difference "is not of degree but of kind." Bell v. Cone, 535 U.S. 685, 697 (2002). Moreover, as the United States Fifth Circuit Court of Appeals has noted, the difference is of the utmost importance because the two claims require different types of analyses:

> The difference between bad and no lawyering is critical ... because very different results flow from the label which is attached to the conduct in question. If the lawyering is merely ineffective, then the decision to upset the conviction, which turns on the presence of incompetence and prejudice, is made on a case by case basis. See Strickland. If, on the other hand, the defendant was constructively denied the assistance of counsel, then the conviction must be overturned because prejudice is presumed. See Cronic.

Woodward v. Collins, 898 F.2d 1027, 1028 (5th Cir. 1990); see also Appel v. Horn, 250 F.3d 203, 210 (3rd Cir. 2001) (noting that "[t]he two claims, of course, are different").

Accordingly, a Cronic claim is not the "substantial equivalent" of a Strickland claim for exhaustion purposes. Therefore, because petitioner cited only Strickland in the Louisiana Supreme Court writ application and clearly failed to adequately inform that court that he was also seeking relief under the distinct legal theory set forth in Cronic, his Cronic claim in his federal application was never "fairly presented" to the Louisiana Supreme Court as required for the claim to be exhausted. See Whitehead, 157 F.3d at 387; see also Huntley v. McGrath, 261 Fed. App'x 4, 6 (9th Cir. 2007), cert. denied, 128 S.Ct. 2516 (2008).

Petitioner's counsel also seeks to excuse the failure to expressly raise a Cronic claim in state court by arguing that legal citations are "discouraged" in state post-conviction proceedings.[32] However, his writ application in number 08-KP-0052 is *replete* with legal citations throughout, specifically *including* a citation to Strickland,[33] while a citation to Cronic is conspicuously absent.

---

[32] Rec. Doc. 16, p. 20.

[33] State Rec., Vol. XI of XII, writ application (No. 08-KP-0052), p. 15.

Any suggestion that a Cronic citation or analysis was purposely omitted by post-conviction counsel[34] out of a purported deference to state court preferences is, *at best*, disingenuous.

Accordingly, for the foregoing reasons, the Court finds that Claims 1 and 3 of petitioner's federal application are unexhausted. As a result, petitioner's federal application is a mixed petition and should therefore be dismissed without prejudice on that basis. See Alexander v. Johnson, 163 F.3d 906, 908 (5th Cir. 1998) ("A habeas petition containing both exhausted and unexhausted claims is a 'mixed' petition which should be dismissed without prejudice.").

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition of **Shawn Higgins** for federal *habeas corpus* relief be **DISMISSED WITHOUT PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[35]

---

[34] The Court notes that writ application number 08-KP-0052 was not filed *pro se*; rather, it was filed by the same attorney who filed petitioner's federal application.

[35] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

New Orleans, Louisiana, this fifth day of February, 2010.

                                                              **DANIEL E. KNOWLES, III**
                                                              **UNITED STATES MAGISTRATE JUDGE**