UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

**SHAWN HIGGINS #350955**                                    **CIVIL ACTION**

**VERSUS**                                                   **NO. 09-2330**

**BURL CAIN, WARDEN**                                        **SECTION "I"(3)**

**SUPPLEMENTAL RESPONSE TO HABEAS PETITION**

<u>**CUSTODY**</u>

Petitioner is a state court prisoner incarcerated in Louisiana State Penitentiary, Angola, Louisiana, after being convicted of second degree murder in case number 98-7021 of the docket of the 24th Judicial District Court, Jefferson Parish, Louisiana. Petitioner was sentenced in case number 98-7021 to serve life imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. Petitioner is in custody for purposes of 28 U.S.C. 2254.

<u>**RECORD**</u>

In this matter, undersigned counsel previously submitted a twelve volume record as follows: volumes one through three containing the state district court record in case number 98-7021 of the docket of the 24th Judicial District Court, Parish of Jefferson; volumes four through ten containing the appellate record in this matter; and volumes eleven and twelve containing the writ applications filed in the Louisiana Supreme Court in this matter under docket numbers 01-KO-3267 and 08-KP-0052. Respondent submits that the record is sufficient for this Court's review, and that no evidentiary hearing is required.

**PROCEDURE**

On June 1, 2009, Respondent filed a response in opposition to the instant *habeas corpus* petition, arguing that Petitioner's first three claims were unexhausted.[1] Respondent further argued that Petitioner's fourth claim was procedurally defaulted, and answered Petitioner's exhausted fifth claim on the merits. This Honorable Court concluded in its *Report and Recommendation* that Petitioner's first and third claims were unexhausted, but found Petitioner's second claim to be exhausted.[2] This finding was adopted by the United States District Judge.[3] However, the United States District Judge subsequently allowed Petitioner to dismiss his unexhausted claims, and referred the instant matter back to this Honorable Court for a Report and Recommendation on the exhausted claims (claims two, four, and five).[4]

On July 9, 2010, this Court ordered the respondent to file a supplemental response addressing Petitioner's exhausted claims.[5] More specifically, this Court directed the respondent to address in detail Petitioner's claim that he is entitled to relief based on the failure of his appellate counsel to raise a *Batson* claim, including:

> (1) whether the trial court committed reversible error by (a) failing to require the prosecutor to proffer reasons for striking Cooper, Walton, and Sharpe, in light of the fact that he voluntarily proffered his reasons for striking Hobson and Penn, and/or (b) failing to proceed to the third step of the *Batson* analysis;

---

[1] Rec. Doc. 11.

[2] Rec. Doc. 19.

[3] Rec. Doc. 23.

[4] Rec. Docs. 28, 29 .

[5] Rec. Doc. 30.

2

(2) if it was reversible error, whether (a) appellate counsel's performance was in fact deficient based on his failure to raise a *Batson* claim and (b) Petitioner was prejudiced as a result of that failure; and

(3) what relief should be granted if the Court determines that the ineffective assistance claim is meritorious.

Rec. Doc. 30, pp. 3-4.

## FACTS

The facts of the instant offense as found by the Fifth Circuit Court of Appeals in *State v. Higgins*, 01-KA-368 (La. App. 5 Cir. 10/17/01), 800 So.2d 918, 920, are recounted in the respondent's original response in this matter.

## STANDARD OF REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214. The standard of review is governed by 28 U.S.C. 2254(d). As recognized by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000), "§ 2254 (d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." Under AEDPA, claims adjudicated on the merits in state court proceedings are subject to the following standard of review:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim - -
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable

> determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d).

The Supreme Court has clarified that a decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 120 S.Ct. at 1523. With regard to the "unreasonable application" clause, the Court has held that a federal habeas court may grant the writ only if the state court unreasonably applies the correct governing legal principle to the facts of the prisoner's case. *Id.* "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams v. Taylor*, 120 S.Ct. at 1521. As noted by the United States Fifth Circuit, because the standard of review is one of objective reasonableness, "mere disagreement" with the state court is not enough to warrant relief. *Orman v. Cain*, 228 F.3d 616, 619 (5th Cir. 2000). Under 28 U.S.C. 2254(e)(1), the state court's findings are entitled to a presumption of correctness. Most importantly, pursuant to 28 U.S.C. 2254(e)(1), the petitioner bears the burden of rebutting this presumption of correctness by clear and convincing evidence.

## LAW AND ARGUMENT

**CLAIM TWO**: **ALLEGED INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL (BATSON)**

Ineffective assistance of counsel claims are analyzed under the two prong test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984); *Murray v. Maggio*, 736 F.2d 279, 281 (5th Cir.

1984). The proper standard for judging counsel's performance is that of reasonably effective assistance, considering all the circumstances. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065 36 F.2d at 281. Appellate scrutiny of counsel's performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

As for the second prong, a defendant is prejudiced if there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. A "reasonable probability" is probability sufficient to undermine confidence in the outcome. *Id.*, 466 U.S. at 694, 104 S.Ct. at 2068; *Green v. Lynaugh*, 868 F.2d 176, 177 (5th Cir. 1989). However, if the facts adduced at trial point so overwhelmingly to petitioner's guilt that even the most competent attorney would be unlikely to have obtained an acquittal, the claim of ineffective assistance must fail. *Green*, 868 F.2d at 177. To prove prejudice, a petitioner "must show a reasonable probability that, but for counsel's unreasonable failure . . . he would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 764, 145 L.Ed.2d 756 (2000).

Although a right to effective assistance of appellate counsel exists, that right does not include a right to have every nonfrivolous issue raised on appeal. *Jones v. Barnes*, 463 U.S. 745, 752, 754, 103 S.Ct. 3308, 3313, 3314, 77 L.Ed.2d 987 (1983); *Givens v. Cockrell,* 265 F.3d 306, 310 (5th Cir. 2001)(citing *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998)). Instead, appellate counsel's decision to raise certain issues and not others is evaluated in the same manner as trial counsel's decisions at trial, *i.e.,* was "counsel performing in a reasonable effective manner." *Green*, 160 F.3d at 1043.

In *Rice v. Collins*, 546 U.S. 333, 126 S.Ct. 969, 974, 163 L.Ed.2d 824 (2006), the United States Supreme Court described the proper reviewing process for a *Batson* claim as follows:

> A defendant's *Batson* challenge to a peremptory strike requires a three-step inquiry. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. 476 U.S., at 96-97, 106 S.Ct. 1717, 90 L.Ed.2d 69. Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible"; so long as the reason is not inherently discriminatory, it suffices. *Purkett v. Elem*, 514 U.S. 765, 767-768, 115 S.Ct. 1769, 131 L.Ed. 2d (1995)(*per curiam*). Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. *Batson*, *supra*, at 98, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69; *Miller-El v. Dretke*, 545 U.S. 231, 125 S.Ct. 2317, 2331-2332, 162 L.Ed.2d 196 (2005). This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett*, *supra*, at 768, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834.

*Rice*, 126 S.Ct. at 974.

In *Miller- El v. Dretke*, the Supreme Court "made it clear that in considering a *Batson* objection, or in reviewing a ruling claimed to be *Batson* error, all of the circumstances that bear upon the issue of racial animosity must be consulted." *Snyder v. Louisiana*, 552 U.S. 472, 128 S.Ct. 1203, 1208, 170 L.Ed.2d 175 (2008); citing *Miller-El v. Dretke*, 545 U.S. 231, 239, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005). And though *Batson* originally required that the defendant "show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race," the Supreme Court eliminated this requirement in *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723.

Of significance, a reviewing court owes the district judge's evaluations of discriminatory

intent great deference and should not reverse them unless they are clearly erroneous. *State v. Draughn*, 05-1825 (La. 1/17/07) 950 So.2d 583, 600, citing *Hernandez v. New York*, 500 U.S. 352, 364, 111 S.Ct. 1859, 1868, 114 L.Ed.2d 395 (1991); *Batson*, 476 U.S. at 98, n. 21, 106 S.Ct. at 1724; *State v. Dunn*, 2001-1635 p. 7-8 (La. 11/1/02), 831 So.2d 862, 869.  The United States Supreme Court has noted that the trial court has a pivotal role in evaluating *Batson* claims because the third step of the *Batson* inquiry involves an evaluation of the prosecutor's credibility, and also because "race-neutral reasons for peremptory challenges often invoke a juror's demeanor (*e.g.,* nervousness, inattention), making the trial court's first hand observations of even greater importance." *Snyder v. Louisiana*, 552 U.S. 472, 128 S.Ct. 1203, 1208, 170 L.Ed. 2d 175.

The trial record of the case at bar does not contain a complete listing of the racial classification of each member of the jury pool.  However, the racial classification of certain jurors can be inferred from the record.  The transcript of the voir dire proceedings reflects that the selection of jurors proceeded in the following manner.  Prospective jurors were questioned in three rounds of voir dire.  In the first round of voir dire, thirteen prospective jurors were called as a panel and examined by the attorneys for the State and the defendant. (Rec. Doc. 16-3, pp. 10-127).  After the exercise of cause challenges, twelve prospective jurors remained including four black prospective jurors.[6]  The parties then exercised peremptory challenges, with the State exercising four peremptory challenges,[7] and the defense exercising none.  At the conclusion of this panel, eight jurors had been

---

[6] Rec. Doc. 16-3, pp. 128-131; 134-135. This first group included black prospective jurors Thilisia Cooper, Arthur Jones, Marques Walton, and Terry Sharpe. *Id.*

[7] Three of the State's four peremptories were exercised to remove black prospective jurors Thilisia Cooper, Marques Walton, and Terry Sharpe. (Rec. Doc. 16-3, pp. 132-135).

selected, including one black male juror (Arthur Jones). (Rec. Doc. 16-3, p. 135).

A second group consisting of thirteen prospective jurors was called and examined by the State and defense. (Rec. Doc. 16-3, pp. 139-218). After a cause challenge was granted, the second group included three prospective jurors identified on the record as black (Paulette Stern, Sharon Robinson, and Jeffrey Penn).[8] The State did not exercise any peremptory challenges during this round, but the defense exercised two back strikes and four additional peremptory challenges to remove a black female prospective juror (Sharon Robinson),[9] three white males and one white female. Thus, at the conclusion of the second round, the State had accepted four black prospective jurors: Arthur Jones, Paulette Stern, Jeffery Penn and Sharon Robinson.

To complete the selection of the jury, a third group of twelve prospective jurors was called and examined by the State and defense. After the exercise of cause challenges, eleven prospective jurors remained, including one prospective juror (Diane Hobson) identified as black. The parties then exercised peremptory challenges with the state exercising backstrikes to remove white female jurors Corrine Neyre and Susan Pieno, and black male juror Jeffery Penn.[10] The State used its eighth peremptory to remove black prospective juror Dianne Hobson. The defense exercised six peremptory challenges including two backstrikes to remove three white male prospective jurors, two white female prospective jurors, and one black female prospective juror (Paulette Stern).

---

[8] Rec Doc. 16-3, pp. 221, 279, 287 (Stern); p. 276 (Penn); pp. 178, 225, 284 (Robinson).

[9] Rec. Doc. 16-3, pp. 178, 225, 284 (Robinson).

[10] Rec. Doc. 16-3, p. 276.

Of the twelve jurors who were selected and sworn to try the instant case, one black male juror served (Arthur Jones). Altogether, the State accepted (and did not backstrike) three black prospective jurors (Arthur Jones, Sharon Robinson and Paulette Stern); however, counsel for the defendant exercised two peremptory challenges to remove black prospective jurors Paulette Stern and Sharon Robinson, who had been accepted by the State. There is no reasonable probability that, but for appellate counsel's failure to brief a *Batson* claim, the result of the proceedings would have been different.

First, in response to this Honorable Court's query, the trial court did not err in failing to require the prosecutor to proffer reasons for striking Cooper, Walton and Sharpe in the first round of voir dire in light of the fact that he voluntarily proffered his reasons for striking Hobson and Penn in the third round of voir dire. Likewise, there is no merit that the trial court erred in failing to proceed to the third step of the *Baton* analysis.

The trial court did not commit reversible error in failing to require the prosecutor to proffer reasons for striking Cooper, Walton and Sharpe in the first round. Of significance, once the prosecutor volunteered reasons for striking Hobson and Penn in the third round of voir dire, counsel for the defense did not move to require the prosecutor to provide race neutral reasons for the prior strikes and did not object to his failure to provide the same. On appeal, the State appellate court would find this claim to be waived by Petitioner's failure to raise it in the trial court. LSA-C.Cr.P. art. 841. Moreover, Petitioner failed to rebut the State's race-neutral reasons for striking the prospective jurors and evidence of race standing alone offers little evidence of discriminatory intent.; thus, the State court district court was not unreasonable in finding no race discrimination. See,

*Woodward v. Epps* 580 F.3d 318, 339 (5th Cir. 2009). Therefore, appellate counsel's performance was not in fact deficient based on his failure to raise a *Batson* claim and Petitioner was not prejudiced as a result of that failure, as he would not have been entitled to relief on this issue.

Finally, should this Court determine that the ineffective assistance of appellate claim is meritorious in that there is a reasonable probability that the result of the proceedings would have been different but for appellate counsel's failure to raise this claim, this Court should remand the matter to the State intermediate appellate court for a new appeal wherein the assignment may posed and fully considered, possibly resulting in the further remand of the proceedings to the State district court for further development of the record.

**CLAIM FOUR**

It is the respondent's position that Petitioner's fourth claim, that he received ineffective assistance of trial counsel, is procedurally defaulted for the reasons stated in the original response to the petition. Should this Honorable Court determine that Petitioner's fourth claim is not procedurally defaulted, undersigned counsel reserves the right to address this claim on the merits.

**CLAIM FIVE**

The respondent answered Petitioner's fifth claim, that the jury engaged in prejudicial conduct by prematurely deliberating, on the merits in its original response. The respondent maintains that this claim is meritless for the reasons set forth in the original response.[11]

---

[11] Rec. Doc. 11.

## CONCLUSION

Wherefore the State respectfully submits that the second and fifth claims presented in the petition should be denied as meritless. Petitioner's fourth claim should be denied as procedurally defaulted..

        Respectfully submitted,

        /S/ Juliet Clark
        Juliet Clark, Bar No. 23451
        Assistant District Attorney
        24th Judicial District
        200 Derbigny Street
        Gretna, Louisiana 70053
        (504) 368-1020

## CERTIFICATE OF SERVICE

I hereby that I have served a copy of the foregoing supplemental response upon the following CM/ECF participants:

        Ben Cohen
        William Sothern
        636 Baronne Street
        New Orleans Louisiana 70113
        Attorneys for Shawn Higgins

        /s/ JULIET CLARK
        Juliet Clark